IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES JOHNSON, #R43615, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18−cv−1374−NJR |
| | ) |
| JOHN BALDWIN, | ) |
| WARDEN RANDY PFISTER, | ) |
| JACQUELINE LASHBROOK, | ) |
| MEDICAL DIRECTOR SIDDIQUI, | ) |
| SUSAN HAWKINS, | ) |
| REEVA ENGELAGE, | ) |
| MAJOR CHAD HASSELMEYER, | ) |
| LIEUTENANT WITTHOFT, | ) |
| SERGEANT LINDENBERG, | ) |
| SERGEANT JONES, | ) |
| KYLE A. BRUMLEVE, | ) |
| WESLEY N. ENGELAGE, | ) |
| JOHN MCCALEB, | ) |
| GUARD GRIFFIN, | ) |
| GUARD DUDINSKI, | ) |
| GUARD DULAINEY, | ) |
| JOHN DOE 1 and 2, | ) |
| JOHN DOE TACT TEAM 1-4, and | ) |
| MAJOR CARTER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff James Johnson, an inmate in Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. In his First Amended Complaint, Plaintiff claims the Defendants violated his rights to practice his religion and to be free from cruel and unusual punishment in various ways. (Doc. 19).

This case is now before the Court for a preliminary review of the First Amended

1

Complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who is immune from such relief, must be dismissed. 28 U.S.C. § 1915A(b).

As a part of screening, the Court is allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important. *Id*. The Seventh Circuit has also recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *see also Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017) (district court should have severed improperly joined claims or dismissed one of them). Unrelated claims will therefore be severed from this case.

## The First Amended Complaint

In his First Amended Complaint (Doc. 19), Plaintiff makes the following claims: Defendant Pfister, the Warden at Stateville Correctional Center, violated Plaintiff's right to practice his religion and his right to be free from cruel and unusual punishment by transferring him to Menard. (Doc. 19, p. 16).

Defendant Baldwin's prison grooming policies violate Plaintiff's right to religious liberty and are discriminatory against black inmates, who are the target of the policy given the prevalence of the banned hairstyle in their cultures and religions, such as Rastafarianism. (Doc 19, pp. 16-17). Defendants Carter and Witthoft violated Plaintiff's right to religious liberty

2

by arranging for his hair to be cut on June 26, 2017, despite his protests that he could not cut it per his religion. (Doc. 19, pp. 11, 17).

Defendant Lashbrook attempted to prevent Plaintiff from filing lawsuits and other complaints by directing correctional officers to abuse him in various ways. (Doc. 19, p. 17). Various combinations of Defendants Carter, Dudinski, Lindenberg, Witthoft, Hasselmeyer, Jones, Brumleve, McCaleb, W. Engelage, John Doe 1 and 2, and John Doe Tact Team 1 through 4 subjected Plaintiff to excessive force or otherwise failed to intervene to protect Plaintiff from excessive force on June 22, 23, and 26, 2017 and July 28, 2017. (Doc. 19, pp. 8-9, 11, 13).

McCaleb and Dudinski urinated on Plaintiff's food tray and spit in his face, respectively, on July 3, 2017. (Doc. 19, p. 12). Lindenberg, Dulainey, Dudinski, Brumleve, McCaleb, W. Engelage, Hasselmeyer, Carter, and Griffin deprived Plaintiff of meals and running water, forced him to sleep nude on his cell floor without bedding, and unplugged his fan in the middle of summer, among other things. (Doc. 19, pp. 9-10, 13, 17-21).

Defendants Siddiqui and Nurse Susan (presumably Susan Hawkins) were deliberately indifferent to Plaintiff's injuries from the attacks when they ignored them on June 26, 2017, and R. Engelage similarly refused to treat Plaintiff's injuries on an unspecified date. (Doc. 19, pp. 11, 14, 21). Up until at least September 20, 2018, Plaintiff continued to suffer from hearing problems, and his wrist hurts daily as a result of the aforementioned assaults. (Doc. 19-2, p. 2).

On August 16, 2018, Witthoft told Plaintiff that if he grows his hair out again, he would put him in segregation and cut it. *Id.* On August 31, 2018, Carter told Plaintiff to cut his hair soon or face segregation, a beating, and a haircut. (Doc. 19-2, p. 1). Plaintiff's hair is growing, and he believes these Defendants will make good on their threats soon. (Doc. 19-2, p. 2).

Plaintiff requests declaratory, monetary, and injunctive relief. (Doc. 19, pp. 21-22). He

also has filed a separate Motion for a Preliminary Injunction and Temporary Restraining Order seeking a transfer to another correctional facility. (Doc. 21).

### **Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 16 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Baldwin's grooming policy that required Plaintiff to cut his hair in contravention of his religious beliefs violates Plaintiff's rights under the First Amendment.

**Count 2 –** Baldwin's grooming policy that required Plaintiff to cut his hair in contravention of his religious beliefs violates Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

**Count 3 –** Baldwin's grooming policy that required Plaintiff to cut his hair violates Plaintiff's equal protection rights under the Fourteenth Amendment because it discriminates against black inmates whose religions and cultures often utilize hairstyles that violate the policy.

**Count 4 –** Carter and Witthoft violated Plaintiff's rights under the First Amendment by arranging for his hair to be cut on June 26, 2017 despite his protests that cutting it would go against his religion.

**Count 5 –** Lashbrook attempted to discourage Plaintiff from complaining about his treatment at Menard by threatening him with further abuse at the hands of corrections officers, in violation of the First Amendment.

**Count 6 –** Lashbrook directed corrections officers to subject Plaintiff to unconstitutional conditions of confinement and excessive force, in violation of the Eighth Amendment.

**Count 7 –** McCaleb, W. Engelage, Brumleve, Lindenberg, Jones, and John Does 1 and 2 subjected Plaintiff to excessive force on June 22, 2017 by beating him, in violation of the Eighth Amendment.

**Count 8 –** Hasselmeyer, Dudinski, and John Doe Tact Team 1, 2, 3, and 4 subjected Plaintiff to excessive force on June 23, 2017 by beating him or directing others to beat him, in violation of the Eighth Amendment.

**Count 9 –** Witthoft and Dudinski subjected Plaintiff to excessive force on June 26, 2017 by beating him or failing to intervene in his beating, in violation of the Eighth Amendment.

**Count 10 –** Witthoft subjected Plaintiff to excessive force on June 26, 2017 by sticking him with a needle multiple times, in violation of the Eighth Amendment.

**Count 11 –** Lindenberg, Dulainey, Dudinski, Brumleve, McCaleb, W. Engelage, and Griffin subjected Plaintiff to unconstitutional conditions of confinement by depriving him of meals and running water, forcing him to sleep nude on his cell floor without bedding, and unplugging his fan in the middle of summer, among other things, in violation of the Eighth Amendment.

**Count 12 –** McCaleb and Dudinski subjected Plaintiff to cruel and unusual punishment on July 3, 2017 by urinating on his food and spitting in his face, in violation of the Eighth Amendment.

**Count 13 –** Siddiqui, Hawkins, and R. Engelage were deliberately indifferent to the injuries Plaintiff sustained in the June attacks, in violation of the Eighth Amendment.

**Count 14 –** Defendants intentionally inflicted emotional distress upon Plaintiff from at least June 22, 2017 to July 3, 2017, in violation of Illinois law and as described in Counts 1-13 herein.

**Count 15 –** Brumleve subjected Plaintiff to excessive force on July 28, 2017 by slapping him and kneeing him while he was cuffed, in violation of the Eighth Amendment.

**Count 16 –** Brumleve intentionally inflicted emotion distress upon Plaintiff on July 28, 2017 by verbally abusing him and slapping him and kneeing him while he was cuffed, in violation of Illinois law.

As discussed in more detail below, Counts 1 through 14 will be allowed to proceed past threshold, and Counts 15 and 16 will be severed from this action. Any other intended claim that is not recognized by the Court herein is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

### Counts 1, 2, and 4 – First Amendment and RLUIPA

Under the First Amendment, prisoners "retain the right to practice their religion to the

extent that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). RLUIPA similarly prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless that burden: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a)(1)–(2).

At this early stage, Plaintiff has stated a First Amendment right to practice claim against Baldwin, Carter, and Witthoft for requiring his hair to be cut in violation of his religious beliefs. Because RLUIPA does not allow for money damages against prison officials in their individual capacity, to the extent Plaintiff seeks to bring a RLUIPA claim against Carter and Witthoft, it is considered dismissed. *Nelson v. Miller,* 570 F.3d 868, 886–89 (7th Cir. 2009). For these reasons, Count 1 will proceed against Baldwin, Count 2 will proceed against Baldwin in his official capacity only, and Count 4 will proceed against Carter and Witthoft.

## Count 3 – Equal Protection

To state an equal protection claim based on race, Plaintiff must establish that a state actor has purposely treated him differently than persons of a different race. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Plaintiff has stated a claim under this standard against Baldwin, whose grooming policy allegedly targets black inmates. Count 3 will proceed against him.

## Count 5 – Prior Restraint

"Threatening penalties for future speech goes by the name 'prior restraint,' and a prior restraint is the quintessential first-amendment violation." *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) (the First Amendment protects "speakers from threats of punishment that are designed to discourage future speech."). Plaintiff has stated a First Amendment prior restraint

claim under this standard. Count 5 will therefore proceed against Lashbrook.

### Counts 6 and 12 – Cruel and Unusual Punishment

"The Eighth Amendment protects against 'calculated harassment unrelated to prison needs.'" *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (citing *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)). Thus, Plaintiff's claims that McCaleb and Dudinski urinated on his food and spit in his face, and Lashbrook orchestrated abuse at the hands of corrections officers, state cognizable cruel and unusual punishment claims. Counts 6 and 12 will therefore proceed.

### Counts 7, 8, 9, and 10 – Excessive Force

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010). Similarly, officials "who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so" may be held liable under § 1983. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000)).

Plaintiff has stated a claim under this standard based on the alleged aggressive acts directed toward Plaintiff on June 22, 23, and 26, 2017 against each of the defendants associated with them, for either carrying them out, condoning them, or directing them. Counts 7, 8, 9, and 10 will therefore proceed past threshold.

### Count 11 – Conditions of Confinement

To prevail on an Eighth Amendment claim based on inadequate prison conditions, Plaintiff must show that (1) the conditions in the prison were objectively "sufficiently serious so that a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," and (2) prison officials acted with deliberate indifference to those conditions.

*Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal citations omitted). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006).

Plaintiff's allegations that Lindenberg, Dulainey, Dudinski, Brumleve, McCaleb, W. Engelage, and Griffin deprived him of meals and running water, forced him to sleep nude on his cell floor without bedding, and unplugged his fan though he was without adequate ventilation, among other things, state a conditions of confinement claim upon which relief may be granted against them. *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1981) ("A state must provide ... reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (*i.e.*, hot and cold water, light, heat, plumbing)"). Count 11 will therefore proceed.

## Count 13 – Deliberate Indifference to Medical Needs

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff has stated a claim under this standard based on his allegations that Siddiqui, Hawkins, and R. Engelage ignored the injuries he sustained in the late June assaults, from which he continues to suffer. Count 13 will therefore proceed against them.

## Count 14 – Illinois Intentional Infliction of Emotional Distress

Under Illinois law, the tort of intentional infliction of emotional distress covers acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164

8

(Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla. 1958)). Given the allegations, the Court cannot say that Plaintiff has not stated a claim under this standard against the Defendants for Counts 1 through 13. Count 14 will therefore proceed against them.

### Severance

Though the Northern District of Illinois dismissed Plaintiff's claims against Pfister prior to transferring this case to this District, the dismissal does not appear to have been with prejudice. (Doc. 10, p. 2). Plaintiff has once again attempted to bring various claims against Pfister in his First Amended Complaint. Because such claims do not belong in this action, they will be severed. Plaintiff's claims against Brumleve related to an isolated incident of excessive force on July 28, 2017 also appear to be unrelated to Counts 1 through 14, which largely took place from June 22, 2017 to July 3, 2017. Thus, consistent with *George* and Federal Rules of Civil Procedure 18 and 20, the Court shall sever all claims related to Pfister into a new action against him, and Counts 15 and 16 into a separate action against Brumleve. New cases with newly-assigned case numbers will be opened. A separate merits review shall be conducted in both severed cases after they are opened and assigned to a judge.

### Pending Motions

Plaintiff's Motion for Appointment of Counsel (Doc. 20) is **DENIED** without prejudice. Plaintiff claims he has been precluded from seeking out counsel for himself. (Doc. 20). However, the Court concludes that given his effective recitation of the facts and claims, Plaintiff appears competent to litigate his case on his own at this time. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff may choose to re-file the motion at a later stage in the litigation.

As to Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 21), Plaintiff's request for a preliminary injunction shall **PROCEED** past threshold and

receive further review. To the extent Plaintiff requests a temporary restraining order, however, the Motion is **DENIED**. In order to obtain a temporary restraining order or a preliminary injunction under Rule 65, Plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists, and; (3) Plaintiff will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the district court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id*.

In his Motion, Plaintiff refers to the abuses alleged in the First Amended Complaint and notes that he is now being threatened with segregation, assault, and a haircut. (Doc. 21). Plaintiff requests a transfer from Menard. *Id.* While the Court believes these allegations merit expedited review of the Motion, ordering a prison transfer is a remedy that drastically interferes with prison administration. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Thus, the Court will not grant the Motion before Defendants can be heard.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Counts 7, 8, and 14 against Defendants John Doe 1 and 2 and John Doe Tact Team 1, 2, 3, and 4. However, these defendants must be identified with particularity before service can be made on them. Warden Lashbrook will be responsible for responding to discovery aimed at identifying these defendants. Once their names are discovered, Plaintiff shall file a motion for substitution.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 15 and 16** are **SEVERED** into a new case against **KYLE A. BRUMLEVE** and all claims related to Pfister and/or constitutional violations that allegedly occurred at Stateville Correctional Center are **SEVERED** into a new case against

**PFISTER**. The newly severed cases shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case numbers and judge assignments are made. In the new cases, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The First Amended Complaint (Doc. 19)
- Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 3); and
- Plaintiff's Trust Fund Statement (Doc. 15).

No service shall be ordered in the severed cases until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that **PFISTER** is **DISMISSED** from **this** action with prejudice for the reasons above.

**IT IS FURTHER ORDERED** that **COUNTS 1, 2,** and **3** will **PROCEED** against **BALDWIN**, though **COUNT 2** will proceed against him in his official capacity only.

**COUNT 4** will **PROCEED** against **CARTER** and **WITTHOFT**.

**COUNT 5** and **6** will **PROCEED** against **LASHBROOK**.

**COUNT 7** will **PROCEED** against **MCCALEB, W. ENGELAGE, BRUMLEVE, LINDENBERG, JONES,** and **JOHN DOES 1** and **2**.

**COUNT 8** will **PROCEED** against **HASSELMEYER**, **DUDINSKI**, and **JOHN DOE TACT TEAM 1**, **2**, **3**, and **4**.

**COUNT 9** will **PROCEED** against **WITTHOFT** and **DUDINSKI**.

**COUNT 10** will **PROCEED** against **WITTHOFT**.

**COUNT 11** will **PROCEED** against **LINDENBERG, DULAINEY, DUDINSKI, BRUMLEVE, MCCALEB, W. ENGELAGE,** and **GRIFFIN**.

**COUNT 12** will **PROCEED** against **DUDINSKI** and **MCCALEB**.

**COUNT 13** will **PROCEED** against **SIDDIQUI, HAWKINS,** and **R. ENGELAGE**.

**COUNT 14** will **PROCEED** against **BALDWIN, CARTER, WITTHOFT,**

**LASHBROOK, MCCALEB, W. ENGELAGE, BRUMLEVE, LINDENBERG, JONES, JOHN DOES 1** and **2, HASSELMEYER**, **DUDINSKI**, **JOHN DOE TACT TEAM 1**, **2**, **3**, and **4, DULAINEY, GRIFFIN, SIDDIQUI, HAWKINS,** and **R. ENGELAGE** and is **DISMISSED** against **PFISTER**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 21) is **DENIED** to the extent Plaintiff seeks a temporary restraining order. Plaintiff's Motion (Doc. 21) remains **PENDING** for consideration of his request for a preliminary injunction. Plaintiff is **ORDERED** to advise the Court in writing, immediately, if his hair has already been or is cut while this action is pending. If his hair is cut, he may seek leave to amend his First Amended Complaint to include a claim based thereon.

**IT IS FURTHER ORDERED** that the Clerk of Court shall take appropriate steps in coordination with the United States Marshals Service, to effect formal, **PERSONAL SERVICE** of summons, the First Amended Complaint (Doc. 19), Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 21), and this Order upon each remaining Defendant at his or her work address, as provided by Plaintiff. The Court will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's Motion for a Preliminary Injunction.

The United States Marshals Service is **APPOINTED** pursuant to Federal Rule of Civil Procedure 4(e) to effect service. The Clerk is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **BALDWIN, CARTER, WITTHOFT, LASHBROOK, MCCALEB, W. ENGELAGE, BRUMLEVE, LINDENBERG, JONES, JOHN DOES 1** and **2** (once identified)**, HASSELMEYER**, **DUDINSKI**, **JOHN DOE TACT TEAM 1**, **2**, **3**, and **4** (once identified)**, DULAINEY,**

**GRIFFIN, SIDDIQUI, HAWKINS,** and **R. ENGELAGE**. The Clerk shall issue the completed summons, and prepare a service packet for each Defendant consisting of: the completed summons, the completed form USM-285, a copy of the First Amended Complaint (Doc. 19), a copy of the Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 21), and this Memorandum and Order. The Clerk shall deliver the service packets for each Defendant to the United States Marshals Service for personal service on each Defendant.

Pursuant to Federal Rule of Civil Procedure 4, **within 14 days of the date of this Order**, the United States Marshals Service **SHALL PERSONALLY SERVE** upon **BALDWIN, CARTER, WITTHOFT, LASHBROOK, MCCALEB, W. ENGELAGE, BRUMLEVE, LINDENBERG, JONES, JOHN DOES 1** and **2** (once identified)**, HASSELMEYER**, **DUDINSKI**, **JOHN DOE TACT TEAM 1**, **2**, **3**, and **4** (once identified)**, DULAINEY, GRIFFIN, SIDDIQUI, HAWKINS,** and **R. ENGELAGE,** the service packets containing the summons, form USM-285, a copy of the First Amended Complaint (Doc. 19), the Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 21), and this Memorandum and Order. **LEAVING THE SUMMONS WITH THE PRISON'S LITIGATION COORDINATOR IS NOT SUFFICIENT – each Defendant must be personally served**. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

Service shall not be made on **JOHN DOES 1** and **2** and **JOHN DOE TACT TEAM 1**, **2**, **3**, and **4** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

In order to assist the Court in its resolution of the motion for preliminary injunctive relief,

Defendants **BALDWIN, CARTER, WITTHOFT, LASHBROOK, MCCALEB, W. ENGELAGE, BRUMLEVE, LINDENBERG, JONES, JOHN DOES 1** and **2** (once identified)**, HASSELMEYER**, **DUDINSKI**, **JOHN DOE TACT TEAM 1**, **2**, **3**, and **4** (once identified)**, DULAINEY, GRIFFIN, SIDDIQUI, HAWKINS,** and **R. ENGELAGE SHALL FILE A RESPONSE** to the motion within 14 days of the date of service of the summons.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

This entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that he was granted leave to proceed *in forma pauperis*. See 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**
**DATED: October 5, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**