## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES JOHNSON, #R-43615,   )
           )
     Plaintiff,   )
           )
   -vs-      )   No. 18-cv-1374-NJR
           )
JOHN BALDWIN, et al.,    )
           )
     Defendants.  )

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COME the Defendants, BRIAN ADAMS, JOHN BALDWIN, KYLE BRUMLEVE, JOHN CARTER, CHARLES COMPTON, MATTHEW DULANEY, JOSEPH DOTSON, GEORGE DUDZINSKI, SETH ELLENBERG, REVA ENGELAGE, WESLEY ENGELAGE, GARRETT GRIFFIN, CHAD HASEMEYER, JONATHAN HOFFMAN, ANTHONY JONES, JACQUELINE LASHBROOK, DONNIE LINDENBERG, JOHN MCCALEB, and JERRY WITTHOFT, by and through their attorney, Kwame Raoul, Attorney General for the State of Illinois, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(c), hereby file their Motion for Partial Summary Judgement, stating as follows:

### INTRODUCTION

Plaintiff, James Johnson (#R43615), filed his complaint in the instant matter on September 21, 2017, alleging various violations of his constitutional rights while housed at Menard Correctional Center ("Menard"), a maximum-security facility within the Illinois Department of Corrections ("IDOC"), in June and July of 2017. [Doc. 1]. In its merit review memorandum and order [Doc. 22], the Court determined Plaintiff sufficiently pleaded fourteen (14) claims against Defendants:

1) Defendant Baldwin's grooming policy that required Plaintiff to cut his hair in contravention of his religious beliefs violates Plaintiff's rights under the First Amendment;

2)    Defendant Baldwin's (official capacity only) grooming policy that required Plaintiff to cut his hair in contravention of his religious beliefs violates Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA");

3)    Defendant Baldwin's grooming policy that required Plaintiff to cut his hair violates Plaintiff's equal protection rights under the Fourteenth Amendment because it discriminates against black inmates whose religious and cultures often utilize hairstyles that violate the policy;

4)    Defendants Carter and Witthoft violated Plaintiff's rights under the First Amendment by arranging for his hair to be cut on June 26, 2017, despite his protects that cutting it would go against his religion;

5)    Defendant Lashbrook attempted to discourage Plaintiff from complaining about his treatment at Menard by threatening him with further abuse at the hands of corrections officers, in violation of the First Amendment;

6)    Defendant Lashbrook directed corrections officers to subject Plaintiff to unconstitutional conditions of confinement and excessive force, in violation of the Eighth Amendment;

7)    Defendants McCaleb, W. Engelage, Brumleve, Lindenberg, Jones, and Hoffman subjected Plaintiff to excessive force on June 22, 2017, by beating him in violation of the Eighth Amendment;

8)    Defendants Hasemeyer, Dudzinski, Dotson, Ellenberg, Compton, and Adams subjected Plaintiff to excessive force on June 23, 2017, by beating him or directing others to beat him, in violation of the Eighth Amendment;

9)    Defendants Witthoft and Dudzinski subjected Plaintiff to excessive force on June 26, 2017, by beating him or failing to intervene in his beating, in violation of the Eighth Amendment;

10)    Defendant Witthoft subjected Plaintiff to excessive force on June 26, 2017, by sticking him with a needle multiple times, in violation of the Eighth Amendment;

11)    Defendants Lindenberg, Dulaney, Dudzinski, Brumleve, McCaleb, W. Engelage, and Griffin subjected Plaintiff to unconstitutional conditions of confinement by depriving him of meals and running water, forcing him to sleep nude on his cell floor without bedding, and unplugging his fan in the middle of the summer, among other things, in violation of the Eighth Amendment;

12)    Defendants McCaleb and Dudzinski subjected Plaintiff to cruel and unusual punishment on July 3, 2017 by urinating on his food and spitting in his face, in violation of the Eighth Amendment;

13)    Defendants Siddiqui, Hawkins, and R. Engelage were deliberately indifferent to the injuries Plaintiff sustained in the June attacks, in violation of the Eighth Amendment; and

14)    Defendants intentionally inflicted emotional distress upon Plaintiff from at least June 22, 2017 to July 3, 2017, in violation of Illinois law and as described in Claims 1-13.

## SUMMARY OF ARGUMENT

Defendants now move for partial summary judgment. Defendants are entitled to judgment as a matter of law on Plaintiff's Claims 1, 2, 3, and 4. Defendants Hasemeyer and Dudzinski are entitled to judgment as a matter of law on Plaintiff's Claim 8, and Defendant Dudzinski is similarly entitled to summary judgment on Plaintiff's Claim 12.

With regard to Plaintiff's Claims 1, 3, and 4, any restrictions placed upon Plaintiff's religious exercise by the IDOC individual grooming policy were reasonably related to a legitimate penological interest: namely, safety and security concerns. Moreover, alternative means existed that allowed Plaintiff to exercise his religion, there were numerous negative effects on security personnel if Plaintiff's religious hairstyle was accommodated, and there was no obvious, easy alternative to the enforcement of the individual grooming policy. For these reasons, Defendants Baldwin, Carter, and Witthoft are entitled to judgment as a matter of law on Plaintiff's Claims 1, 3, and 4.

Similarly, with regard to Plaintiff's Claim 2, Plaintiff's religious exercise was not substantially burdened by IDOC's individual grooming policy, and, even if it was, the burden imposed was the least restrictive means for furthering a compelling interest. Defendant Baldwin is also entitled to judgment as a matter of law on Plaintiff's Claim 2 because Plaintiff's Claim 2 is barred by the doctrine of sovereign immunity.

On Plaintiff's Claim 3, Defendant Baldwin is again entitled to judgment as a matter of law. Plaintiff has failed to carry his burden because he has failed to provide admissible evidence that individuals in custody who are not African American and/or Rastafarian, but have hairstyles which present safety or security concerns, are, or were, treated more favorably. In other words, Plaintiff has failed to show that his race and/or religion, and not his hairstyle, is what motivated the implementation of the personal grooming policy.

With regard to all of Plaintiff's Claims against Defendant Baldwin, Plaintiff has also failed to show any personal involvement on behalf of Defendant Baldwin, which is required under a § 1983 claim such as the instant matter. Finally, Defendants Baldwin, Carter, and Witthoft are entitled to the protection of qualified immunity.

Defendant Hasemeyer is entitled to judgment as a matter of law on Plaintiff's Claim 8 because, as Plaintiff testified during his deposition, Defendant Hasmeyer had no involvement in any use of force on Plaintiff on June 23, 2017. Like Defendant Hasemeyer, Defendant Dudzinski had no personal involvement in any alleged use of force on June 23, 2017, because he was not at Menard that day. It was his day off. Defendant Dudzinski was also not at Menard on July 3, 2017. Accordingly, he is entitled to summary judgment on Plaintiff's Claim 12.

In sum, for the foregoing reasons, Defendant Baldwin is entitled to judgment as a matter of law on Plaintiff's Claims 1, 2, and 3. Defendants Carter and Witthoft are entitled to judgment as a matter of law on Plaintiff's Claim 4. Defendants Hasemeyer and Dudzinski are entitled to judgment as a matter of law on Plaintiff's Claim 8, and Defendant Dudzinski is entitled to judgment as a matter of law on Plaintiff's Claim 12.

## **UNDISPUTED MATERIAL FACTS**

1.      Plaintiff, James Johnson (R46315), arrived at Menard on June 21, 2017, as a result of a disciplinary transfer from Stateville Correctional Center.  [Doc. 1; Exhibit 1 – Deposition of Plaintiff, p. 16:7-15; Exhibit 2 – Disciplinary Reports, p. 3-4].

2.      Plaintiff is currently housed at Lawrence Correctional Center. [Ex. 1, p. 15:17-19].

3.      Defendant John Baldwin was the Acting Director of IDOC in June of 2017. [Exhibit 3 – Deposition of Baldwin, p. 10:3-5, 24-25, 11:1-2].

4.      Defendant Major Carter was a correctional major, or shift supervisor, at Menard in June and July of 2017.  [Exhibit 4 – Deposition of Carter, p. 8:9-23].

5.      Defendant Lieutenant Witthoft was a correctional lieutenant at Menard in June and July of 2017.  [Exhibit 5 – Deposition of Witthoft, p. 9:1-9].

6.      Defendant Major Hasemeyer was a correctional major, or shift supervisor, at Menard in June and July of 2017. [Exhibit 6 – Hasemeyer Timesheet].

7.      Defendant Officer Dudzinski was a correctional officer at Menard in June and July of 2017. [Exhibit 7 – Dudzinski Timesheet].

8.      Departmental Rule 502.110 states, in pertinent part:  "[c]ommitted persons may have any length of hair, sideburns, mustaches, or beards so long as they are kept neat and clean and do not create a security risk." Ill. Admin. Code. tit. 20, §502.110 (1993).

9.      Administrative Directive 05.03.160 provides for the enforcement of an "individual grooming policy" for individuals in custody who maintain their hair in a way that poses a health, sanitation, or security risk. [Exhibit 8 – Administrative Directive 05.03.160].

10.     A security risk is defined to include any hairstyle which impedes a thorough search for contraband or creates a risk that staff conducting a search could be injured by hidden contraband or would not be able to detect the contraband. [Ex. 8].

11.     The procedure outlined in Administrative Directive 05.03.160 calls for consecutive verbal and written orders and 48-hour compliance periods after each order to give the individual in custody sufficient time to voluntarily comply with the grooming policy. [Ex. 8].

12.     If, after the final order, the individual still has not complied with the grooming policy, the on-duty Administrative Officer of the facility may order the hairstyle be removed by the tactical team. [Ex. 8].

13.     Administrative Directives are written by IDOC policy personnel in Springfield. [Ex. 3, p. 15:22-25, 16:1-2].

14.     Defendant Baldwin did not participate in the drafting of any IDOC administrative directive pertaining to an individual grooming policy. [Ex. 3, p. 34:4-8].

15.     Defendant Baldwin is not aware of the Menard policy on the hairstyle of individuals in custody. [Ex. 3, p. 15:5-17].

16.     Defendant Baldwin is not aware of the content of the IDOC administrative directive pertaining to the individual grooming policy. [Ex. 3, p. 16:3-5].

17.     Defendant Baldwin did not make any decisions with regard to the implementation of IDOC rules and directives pertaining to hairstyles of individuals in custody. [Ex. 3, p. 16:11-16].

18.     Defendant Baldwin did not review any grievances authored by Plaintiff pertaining to his hairstyle. [Ex. 3, p. 20:14-25, 21:1-15, 22:9-12, 16-24].

19.     Plaintiff was given a direct order to comply with the grooming policy upon his arrival at Menard at 5:30 p.m. on June 21, 2017, by Lieutenant Justin Engelage. [Ex. 2, p. 3-4].

20.     Plaintiff refused to comply with the order and, as a result, was issued a disciplinary ticket. [Ex. 2, p. 3-4].

21.     Plaintiff was given a second direct order to comply with the grooming policy at around 6:30 p.m. on June 23, 2017. [Ex. 2, p. 1, 7-8].

22.     Plaintiff again refused to comply with the order and, as a result, was issued a disciplinary ticket. [Ex. 2, p. 1, 7-8].

23.     On June 26, 2017, at approximately 7:45 a.m., Plaintiff was given a third and final direct order by Defendant Major Carter to comply with the grooming policy and get his hair cut. [Ex. 2, p. 2, 6].

24.     Plaintiff refused the third and final direct order to comply with the grooming policy. [Ex. 2, p. 2, 6].

25.    As a result of Plaintiff's refusal of the third direct order, Plaintiff's hair was cut by the facility barber on June 26, 2017. [Exhibit 9 – Incident Reports].

26.    Plaintiff is Rastafarian. [Doc. 1; Ex. 1, p. 69:17-19].

27.    An important part of Plaintiff's religion includes following a certain diet, which he adhered to while at Menard, consisting of eating as much fresh food as possible. Plaintiff also testified he ate a lot of fish. [Ex. 1, p. 75:12-22].

28.    Plaintiff prays multiple times a day and was able to do so while at Menard. [Ex. 1, p. 76:13-16].

29.    Plaintiff had access to various religious texts. [Ex. 1, p. 75:23-25, 76:1-14].

30.    When he was not in restrictive housing, Plaintiff was able to attend group religious services. [Ex. 1, p. 76:17-25].

31.    Although there were not religious group services directed to Rastafarians, he testified that the Jewish group services were similar, and that he was able to attend. [Ex. 1, p. 76:17-25].

32.    Plaintiff testified that he has taken the Nazarite vow, which is a promise to not cut ones hair. [Ex. 1, p. 69:20-25, 75:5-11].

33.    As a result, Plaintiff had extremely long and constrictive type braids that could not be manually removed from his hair. [Ex. 1, p. 74:17-25, 75:1-4; Ex. 4, p. 33:14-25; 34:1-5].

34.    Plaintiff's hairstyle prevented security personnel from being able to fully search Plaintiff's person for contraband, such as weapons or drugs. [Doc. 48; Doc. 49; Ex. 4, p. 17:8-12; 20:17-19; 33:20-25; 34:1-5].

35.    Defendant Major Carter has personally experienced individuals in custody concealing weapons, such as a sewing needle in their dreadlocks. [Ex. 4, p. 34:6-11].

36.    Defendant Hasemeyer had no personal involvement in any alleged use of force against Plaintiff on June 23, 2017. [Ex. 1, p. 60:14-25, 62:1-25, 63:1-16; 139:16-22; Ex. 6].

37.     Defendant Hasemeyer did not work and was not at Menard on June 23, 2017. [Ex. 6].

38.     Officer George Dudzinski did not work and was not at Menard on June 23, 2017. [Ex. 7; Exhibit 10 – June 23, 2017 Roster].

39.     Officer George Dudzinski did not work and was not at Menard on July 3, 2017. [Ex. 7; Exhibit 11 – July 3, 2017 Roster].

40.     Pursuant to IDOC records, Defendant Dudzinski used 7.5 hours of accumulated holiday time on July 3, 2017. [Ex. 7; Ex. 11].

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered if the pleadings, depositions, interrogatories, and admissions, together with affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The plaintiff cannot rest on mere allegations to get to a jury. *Id*. The plaintiff must provide at least some significant probative evidence in support of his complaint. *See, e.g., id.* When deciding whether a genuine issue of material fact exists, the court must view inferences drawn from the record in the light most favorable to the non-moving party. *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir. 1986). The court is required to draw only reasonable inferences, not all inferences of which it can conceive. *Id*. at 312-13.

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the United States Supreme Court held that summary judgment is mandatory if there is no genuine issue as to any material fact for trial. *Id*. at 323. To defeat a motion for summary judgment, a plaintiff must show concrete evidence documenting a genuine issue of fact that is material in the sense that it is outcome determinative. *Outlaw v. Newkirk*,

259 F.3d 833, 837 (7th Cir. 2007). Absent such a showing by plaintiff, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23.

## ARGUMENT

The Court should grant Defendants' partial motion for summary judgment because: (1) the IDOC grooming policy and its implementation on Plaintiff on June 26, 2017, were reasonably related to a legitimate penological interest; (2) the grooming policy, even if it substantially burdened Plaintiff's religious practice, was the least restrictive means of furthering the compelling penological interest of protecting the safety and security of the facility; (3) Plaintiff's RLUIPA is barred by sovereign immunity; (4) Plaintiff has failed to submit admissible evidence that individuals in custody who are not African American, but who had hairstyles which presented a risk to safety and security, were not required to adhere to the individual grooming policy; (5) Defendant Hasemeyer was incorrectly identified as a defendant and was not at Menard on June 23, 2017; (6) Defendant Dudzinski was not at Menard on June 23, 2017 or July 3, 2021; (7) Defendant Baldwin had no personal involvement in any constitutional violation; and (8) Defendants Baldwin, Carter, and Witthoft are entitled to the protection of qualified immunity.

## I. DEFENDANT BALDWIN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS 1 AND 3 AGAINST HIM BECAUSE HE HAD NO PERSONAL INVOLVEMENT IN ANY ALLEGED CONSTITUTIONAL VIOLATION.

A defendant cannot be held liable under 42 U.S.C. § 1983 unless a plaintiff can demonstrate that the defendant caused or participated in the alleged constitutional violation. *McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir. 1982). A causal connection, or affirmative link, between the misconduct complained of and the official sued is necessary. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). In addition, the mere fact that a defendant was a supervisor is insufficient to establish liability because the doctrine of respondeat superior (supervisor liability) does not apply to actions filed under 42 U.S.C. § 1983. *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995); *Pacelli v. Devito*, 972 F.2d

871, 877 (7th Cir. 1992). In a case where the defendants are a series of individuals going up the organizational chart, "the assumption underlying this choice of defendants - that anyone who knew or should have known of [the plaintiff's medical condition], and everyone higher up the bureaucratic chain, must be liable - is a bad one. Section 1983 does not establish a system of vicarious responsibility." *Burks v. Raemisch*, 555 F.3d 592, 593-94 (citing *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978)). Thus, a supervisor cannot be held liable in a § 1983 action unless the supervisor was personally involved in the wrongful conduct such that she caused or participated in the alleged constitutional violations. *Boyce v. Moore,* 314 F.3d 884, 888 (7th Cir. 2002). Further, a supervisor's negligence or even gross negligence in failing to detect or prevent subordinates' misconduct does not create liability under § 1983. *Jones v. City of Chicago,* 856 F.2d, 992 (7th Cir. 1998).

A supervisor can only be held liable under § 1983 for the conduct of his subordinates if he knows about the conduct and facilitates it, approves it, condones it, or turns a blind eye for fear of what he might see; in other words, he must act either knowingly or with deliberate, reckless indifference. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Moreover, the Seventh Circuit has held that public employees are responsible for their own misdeeds but not for anyone else's. *Burks,* 555 F.3d at 596. Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. *Wolfe-Lillie v. Sonquist*, 699 F.2d 864, 869 (1983).

In the instant matter, Plaintiff provides no evidence that Defendant Baldwin was personally involved in any alleged constitutional violation. Defendant Baldwin, the former Acting Director of IDOC, did not draft or participate in the drafting of IDOC's grooming policy; rather, policy personnel in Springfield write IDOC rules and directives. [UMF 3, 13 & 14]. Defendant Baldwin did not make any decisions with regard to the implementation of IDOC's grooming policy. [UMF 17]. Defendant Baldwin is not even aware of IDOC policies, rules, or directives with regard to the hairstyles of

individuals in custody. [UMF 15 and 16]. Finally, Defendant Baldwin did not review any grievances authored by Plaintiff pertaining to his hairstyle. [UMF 18].

Because Plaintiff has failed to show that Defendant Baldwin was even aware of the IDOC policy on hairstyle, or its implementation on Plaintiff in June of 2017, his claim fails as a matter of law. Defendant Baldwin is entitled to summary judgment on Plaintiff's Claims 1 and 3.

## II.    PLAINTIFF'S CLAIM 2 AGAINST DEFENDANT BALDWIN IN HIS OFFICIAL CAPACITY IS BARRED BY SOVEREIGN IMMUNITY.

Monetary damages may only be sought from the defendant individually; official capacity suits are actually suits against the State, and the Eleventh Amendment bars such damages actions. *Kentucky v. Graham*, 473 U.S. 159, 166-167 and 169 (1985). The state, state agencies, and state officials acting in their official capacities are not "persons" who may be sued for damages under §1983. *Omosegbon v. Wells*, 335 F.3d 668, 672-73 (7th Cir. 2003). This is because the Eleventh Amendment bars suits for money damages against a state, its officials acting in their official capacities, and its agencies. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

The Eleventh Amendment also bars suit for injunctive relief against the state absent a showing of ongoing Constitutional violation. *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). Injunctive and other equitable relief can be granted against a state official without violating the Eleventh Amendment when the official is acting in violation of the Federal Constitution. *Ex parte Young*, 209 U.S. 123, 159 (1908). However, any equitable relief granted must be prospective in nature. *Edelman v. Jordan*, 415 U.S. 651 (1974).

Here, Plaintiff's Claim 2 against Defendant Baldwin is in his official capacity as the former Acting Director of IDOC. IDOC is an arm of the state and actions for monetary damages against IDOC are barred by the PLRA. Plaintiff's claim is barred by the doctrine of sovereign immunity, and Defendant Baldwin is entitled to judgment as a matter of law on Plaintiff's Claim 2.

III.  **DEFENDANTS BALDWIN, CARTER, AND WITTHOFT DID NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHTS BECAUSE ANY RESTRICTION IMPOSED UPON PLAINTIFF'S RELIGIOUS EXERCISE BY THE INDIVIDUAL GROOMING POLICY WAS REASONABLY RELATED TO A LEGITIMATE PENOLOGICAL INTEREST.**

Defendants are entitled to judgment as a matter of law on Plaintiff's First Amendment claims because any restriction placed upon Plaintiff's free exercise was reasonably related to a legitimate penological interest—arguably, the most significant penological interest of institutional safety and security. Incarcerated persons have "the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state," including security and economic concerns. *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). "A prisoner's right to freely exercise their religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion." *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996). Restrictions infringing upon an inmate's religious exercise will be upheld if reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (collecting cases). Four factors are used to ascertain the reasonableness of a prison regulation:  (1) whether a valid, rational connection exists between the regulation and a legitimate government interest; (2) whether there are alternative means of exercising the right in question that remain available to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards, other inmates, and prison resources; and (4) the availability of obvious, easy alternatives. *Turner*, 482 U.S. at 78; *see also Beard v. Banks*, 548 U.S. 521 (2006) (examining the *Turner* factors and explaining that "the Constitution sometimes permits greater restriction of [] rights in a prison than it would allow elsewhere[.]").

In the instant matter, Plaintiff's Claims 1, 3, and 4 pertain to the constitutionality of the IDOC individual grooming policy and its application to Plaintiff on June 26, 2017. As discussed *infra*, the IDOC grooming policy is reasonably related to the legitimate penological interest of protecting the

staff and individuals in custody at Menard. The IDOC policy exists to ensure the safety of individuals in custody and staff alike. The policy does not prohibit individuals in custody from exercising their religion in other ways, and accommodating dreadlocked hair, or any hairstyle which cannot safely be searched by staff, would create a significant burden on limited IDOC resources. For these reasons, Defendants are entitled to summary judgment on Plaintiff's Claims 1, 3 and 4.

### A.   There is a valid and rational connection between the individual grooming policy and institutional order, safety, and security within the prison.

A valid, rational connection exists between prohibiting certain unsearchable hairstyles in order to promote institutional order, safety, and security. Any hairstyle that is unable to be searched by security personnel creates a security risk. [UMF 8, 10, and 34]. As explained by Defendant Carter, individuals in custody have hidden contraband in their hair, such as needles. [UMF 36]. Courts have consistently upheld the implementation of an individual grooming policy based upon safety and security concerns, even with regard to individuals in custody who are Rastafarian, such as Plaintiff. *See, e.g.*, *Clark v. Briley*, No. 03 C 3852, 2005 U.S. Dist. LEXIS 21350, at *8 (N.D. Ill. Sep. 26, 2005) (finding that the forced haircut of a Rastafarian individual in custody who had taken the Nazarite vow at Stateville Correctional Center, a maximum security facility within IDOC, did not violate individual's rights under either the First Amendment or RLUIPA because institutional safety is security is a "well-established . . . compelling state interest.")

Any hairstyle that is unable to be searched by security personnel creates a security risk. [UMF 8 & 10]. Plaintiff's hair was in tight, constrictive braids that were unable to be undone by Plaintiff or anyone else. [UMF 33 & 34]. As explained by Defendant Carter, individuals in custody have hidden contraband in their hair, such as needles. [UMF 35]. Plaintiff's hair was unable to be searched by security personnel, thereby creating a threat to institutional safety and security. [UMF 8, 10, and 34].

A valid, rational connection exists between IDOC's grooming policy and the compelling penological interest of maintaining the safety and security of IDOC facilities.

**B.        Alternative means exist that allow individuals in custody to exercise their religion.**

The grooming policy makes no mention of any religious beliefs or practices. [UMF 8 & 9].
Rather, the policy focuses on *hairstyles* and the safety and security concerns certain hairstyles may
pose. As a result, the policy does not infringe on the ability of individuals in custody, such as Plaintiff,
to exercise their religion. Plaintiff, who is Rastafarian, was able to pray multiple times a day, attend
group religious services, possess religious texts, and follow a religious diet while at Menard. [UMF
26, 27, 28, 29, 30, & 31]. Plaintiff concedes he was able to practice his religion.

**C.        There are numerous negative effects on guards, other inmates, and prison
            resources if individuals in IDOC custody are allowed to have unsearchable
            hairstyles.**

If individuals in custody are allowed to wear their hair in styles that prevent security personnel
from safely and completely searching it, the negative effects on individuals in custody and staff alike
are numerous. Individuals in custody can, and have, hidden contraband in their hair.[UMF 35]. It is
the number one priority of IDOC to maintain the safety and security of individuals in custody and
IDOC personnel. Controlling the amount of contraband within IDOC facilities is of the utmost
importance. Allowing individuals in custody to have hairstyles which are unable to be properly
searched creates a venue through which contraband can, and does, enter IDOC facilities.

If Plaintiff was allowed to keep his long, dreadlocked hairstyle that was unable to be searched
by security personnel at Menard, Plaintiff could have hidden contraband, such as weapons or drugs,
in his hair. [UMF 33, 34, & 35]. Allowing Plaintiff to keep his long, dreadlocked hair would have
created an unnecessary security risk at Menard.

**D.        There is no obvious, easy alternative to the prohibition of unsearchable hairstyles.**

There is no obvious, easy alternative to the implementation of the IDOC grooming policy
prohibiting unsearchable hairstyles of individuals in IDOC custody. The policy does not strive to

deprive individuals in custody of observing their religion, rather it is aimed to prevent individuals in custody from hiding dangerous contraband in their hair.

Plaintiff's hair was extremely long and in tightly wound braids/locks. [UMF 33]. He refused to change his hairstyle to comply with IDOC rules and regulations. [UMF 19, 20, 21, 22, 23, 24, & 25]. Plaintiff's hair was unable to be undone to allow security personnel to search it. [UMF 33 & 34]. The absence of a readily apparent alternative is evidence of the reasonableness of the prison regulation. *Turner,* 482 U.S. at 90. According, the IDOC grooming policy and its implementation on Plaintiff in June of 2017 were both reasonably related to a legitimate penological interest.

Defendants Baldwin, Carter, and Witthoft are entitled to judgment as a matter of law on Plaintiff's Claims 1, 3, and 4 because the forced haircut of Plaintiff on June 26, 2017 was reasonably related to the legitimate penological interest of ensuring the safety and security of Menard. Plaintiff was able to practice his religion while at Menard. Allowing Plaintiff to keep his long, dreadlocked hair would have created a significant safety and security risk because it was unable to be searched for contraband. Plaintiff refused to comply with numerous direct orders to change his hairstyle to comply with IDOC rules. Accordingly, Defendants are entitled to summary judgment on Plaintiff's Claims 1, 3, and 4.

## IV.    PLAINTIFF'S RIGHTS UNDER RLUIPA WERE NOT VIOLATED BECAUSE PLAINTIFF HAS FAILED TO SHOW HIS EXERCISE OF RELIGION WAS SUBSTANTIALLY BURDENED AND, EVEN IF HIS EXERCISE WAS SUBSTANTIALLY BURDENED, THE BURDEN IMPOSED WAS THE LEAST RESTRICTIVE MEANS FOR FURTHERING A COMPELLING INTEREST.

This Court should grant summary judgment in favor of Defendant Baldwin because Plaintiff has failed to show his religious exercise was substantially burdened. Further, any burden imposed was the least restrictive means for furthering a compelling interest.

### A.    Plaintiff failed to show his exercise of religion was substantially burdened.

This Court should grant Defendants' motion for summary judgment because Plaintiff cannot show his exercise of religion was substantially burdened. According to the Seventh Circuit, "a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise effectively impracticable." *Nelson v. Miller*, 570 F.3d 868, 878 (7th Cir. 2009).

Here, no substantial burden has been placed on Plaintiff's ability to exercise his religion. As Plaintiff testified to during his deposition, he had numerous alternative means with which to practice his religion. He was able to pray numerous times a day. [UMF 28]. He had religious texts. [UMF 29]. He was able to attend Jewish group services, which he testified were similar to Rastafarian services. [UMF 30 & 31]. Plaintiff testified that he also adhered to a religious diet while at Menard. [UMF 27]. Plaintiff was more than able to practice his religion while at Menard. Under the standard set forth in *Nelson*, no substantial burden was placed upon Plaintiff's religious exercise by the grooming policy.

**B.    If this Court were to find a substantial burden has been placed on Plaintiff's ability to exercise his religion, a compelling government interest exists for imposing a substantial burden on Plaintiff's religious practice.**

Even if this Court deems that a substantial burden has been placed on Plaintiff's ability to exercise his religion, several compelling interests exist for imposing a burden, and the least restrictive means for imposing a burden was used.

Prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area. *Cutter*, 544 U.S. at 725. Preventing violence within a prison is a compelling state interest. *Bozych v. Frank*, 439 F.3d 388, 390-91 (7th Cir. 2006). "Context matters" in the application of the "compelling government interest" standard, and courts must afford "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures . . . consistent with consideration of costs and limited resources." *Cutter*, 544 U.S. at 723.

As discussed previously, Defendant Baldwin, as former Acting Director of IDOC, had a significant and compelling interest to justify the grooming policy: the safety and security of IDOC facilities. Therefore, Defendant Baldwin should be granted judgment as a matter of law, based upon several compelling interests including: institutional order, safety, security, and the prevention of contraband in IDOC facilities.

## V.    DEFENDANT BALDWIN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EQUAL PROTECTION CLAIM BECAUSE PLAINTIFF HAS FAILED TO CARRY HIS BURDEN.

The Fourteenth Amendment provides, in part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV §1. In order to assert an equal protection claim, a prisoner must allege that he is a member of a protected class and that the prison treated him less favorably than other prisoners not in the class but who are similarly situated. *See Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005); *Harris v. Greer*, 750 F.2d 617, 618-19 (7th Cir. 1984). In addition, the prisoner must show "intentional or purposeful" discrimination by prison officials to prove an equal protection violation. *See Bloomenthal v. Lavelle,* 614 F.2d 1139, 1141 (7th Cir. 1980). "Isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause," such incidents "[a]t most demonstrate a 'mere inconsistency in prison management . . . which . . . may not in itself constitute a cognizable equal protection claim.'" *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (quoting *Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir. 1978)).

In the instant matter, Plaintiff alleges that the IDOC individual grooming policy violated his constitutional rights because it discriminates against African Americans whose religions and cultures often utilize hairstyles that violate the policy. However, Plaintiff has failed to carry his burden and his claim fails as a matter of law.

The IDOC grooming policy makes no mention of race or religion. [UMF 8, 9, 10, 11 and 12]. Rather, it is focused entirely on the hairstyle of the individual in custody. In addition to hairstyles that are unable to be searched, the grooming policy mentions hairstyles that reference and/or are in some way affiliated with a security threat group ("STG") as in violation of the policy, as well. [Ex. 8]. Plaintiff has failed to show that the IDOC policy, or any of the Defendants, intentionally or purposefully discriminated against him. *Bloomenthal*, 614 F.2d at 1141.

There is no material issue for a jury to decide. Plaintiff has failed to carry his burden with respect to this equal protection claim, and Defendant Baldwin is entitled to judgment as a matter of law on Plaintiff's Claim 3.

## VI.    DEFENDANT HASEMEYER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM 8 BECAUSE HE WAS INCORRECTLY IDENTIFIED BY PLAINTIFF AND HAD NO PERSONAL INVOLVEMENT IN ANY ALLEGED CONSTITUTIONAL VIOLATION.

As previously outlined in Section I, *supra*, a defendant cannot be held liable under § 1983 unless he had personal involvement in the alleged constitutional violation. During his deposition, Plaintiff testified that he would file a motion with the Court to remove Defendant Hasemeyer as a defendant in this matter because Plaintiff incorrectly identified him. [UMF 36 & 37]. Plaintiff did not file such a motion. However, based upon Plaintiff's testimony during his deposition, and the fact that IDOC records indicate that Defendant Hasemeyer was not at work at Menard on June 23, 2017 [UMF 36 & 37], Defendant Hasemeyer had no personal involvement in any alleged constitutional violation against Plaintiff on June 23, 2017, and therefore, Plaintiff's Claim 8 of excessive force against Defendant Hasemeyer fails.

Because Plaintiff admitted he was mistaken when he identified Defendant Hasemeyer as a defendant, and because IDOC records indicate Defendant Hasemeyer was not at Menard on June 23, 2017, Defendant Hasemeyer is entitled to summary judgment on Plaintiff's Claim 8.

**VII.  DEFENDANT DUDZINSKI IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS 8 AND 12 BECAUSE HE AS NOT AT MENARD ON JUNE 23, 2017 OR JULY 3, 2017 AND HAD NO PERSONAL INVOLVEMENT IN ANY ALLEGED CONSTITUTIONAL VIOLATION.**

Defendant Dudzinski is also entitled to judgment as a matter of law on Plaintiff's Claims 8 and 12 because IDOC records indicate he was not at work on June 23, 2017 or July 3, 2017. [UMF 38, 39 & 40]. Because Dudzinski was not at work on those dates, he could not have had any personal involvement in any of the alleged constitutional violations outlined in Claims 8 and 12. Defendant Dudzinski should be granted summary judgment on these claims.

**VIII.  DEFENDANTS BALDWIN, CARTER, AND WITTHOFT ARE ENTITLED TO THE PROTECTION OF QUALIFIED IMMUNITY.**

Government officials performing discretionary functions are generally shielded from liability or civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights. *See Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006). Not being experts in prison administration, but aware of the security problems in American prisons, judges sensibly defer within broad limits to the judgments of prison administrators. *Toston v. Thurmer*, 689 F.3d 828, 830 (7th Cir. 2012). This qualified immunity protects correctional officers from liability as well as from the burden of standing trial. *Id*. Government officials may be protected from liability for objectively reasonable decisions, even if the decision is later determined to be wrong. *See Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1998).

Courts have consistently held that prison officials are permitted, "to the extent required by the exigencies of prison administration," to discriminate against a faith. *Ra Chaka v. Franzen*, 727 F. Supp. 454, 460 (N.D. Ill. 1989) (citing *Butler-Bey v. Frey*, 811 F.2d 449, 453-54 (8th Cir. 1987)); *see also Cutter*, 544 U.S. at 720 (holding that religious accommodations cannot override a prison's significant security interests, and that courts should defer to the expertise of prison officials in matters of prison security). Requiring an inmate to cut his hair when it is otherwise unsearchable does not

violate the First Amendment. *Lewis v. Snyder*, 2011 WL 4036140, at * 4 (N.D. Ill. Sept. 12, 2011) (finding that such a policy is the least restrictive means of furthering the institution's security interests as required under RLUIPA, which provides greater protection than the First Amendment); *see also Thomas v. Winters*, 2006 WL 563035, at * 4 (C.D. Illl. Mar. 8, 2006) ("Protecting prison officials and preventing inmates from possessing contraband and weapons are unquestionably compelling government interests."). There is no prison interest of more importance than that of prison security. Courts have long recognized this. To now hold Defendants liable on the facts in this matter would be a departure from precedent. Accordingly, this Court should find that Defendants Baldwin, Carter, and Witthoft are entitled to qualified immunity.

## <u>CONCLUSION</u>

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this Court grant their partial motion for summary judgment and any other such relief deemed just and proper.

Respectfully submitted,

BRIAN ADAMS, JOHN BALDWIN, KYLE BRUMLEVE, JOHN CARTER, CHARLES COMPTON, MATTHEW DELANEY, JOSEPH DOTSON, GEORGE DUDZINSKI, SETH ELLENBERG, REVA ENGELAGE, WESLEY ENGELAGE, GARRETT GRIFFIN, CHAD HASEMEYER, JONATHAN HOFFMAN, ANTHONY JONES, JACQUELINE LASHBROOK, DONNIE LINDENBERG, JOHN MCCALEB, and JERRY WITTHOFT,

Defendants,

Megan Ditzler #6318052
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
(217) 557-0261 Phone
(217) 524-5091 Fax
Email: megan.ditzler@ilag.gov

KWAME RAOUL, Attorney General,
State of Illinois,

Attorney for Defendants,

By: /s/ Megan A. Ditzler
      Megan Ditzler

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES JOHNSON, #R-43615,    )
                               )
          Plaintiff,       )
                               )
    -vs-               )          No. 18-cv-1374-NJR
                               )
JOHN BALDWIN, et al.,       )
                               )
         Defendants.    )

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 29, 2021, I electronically filed *Defendants' Motion for Partial Summary Judgment* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Lauren E. Herbig, Esq. | lauren.herbig@bclplaw.com |
| Daniel A. Crowe, Esq. | dacrowe@bclplaw.com |
| Alison Matusofsky | amatusofsky@cassiday.com |

and I hereby certify that on December 29, 2021, I mailed by United States Postal Service, the document to the following non-registered participant:

NONE

Respectfully submitted,

__s/Megan Ditzler_____
Megan Ditzler, #6318052
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62701
(217) 557-0261 Phone
(217) 524-5091 Fax
megan.ditzler@ilag.gov